UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SHARON REID, as parent and natural
guardian of M.H.

                Plaintiff,

      -against-                           1:07-CV-0577 (LEK)

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On August 2, 2005, Plaintiff Sharon Reid ("Plaintiff"), filed an application on behalf of her then-minor son, M.H. ("Claimant"), for Supplemental Security Income Benefits ("SSI") under the Social Security Act ("the Act"), as amended by the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No.104-193.  In that application, Plaintiff asserts that her son has been disabled since July 30, 1996.  The Commissioner of Social Security denied Claimant benefits for lack of disability.

Plaintiff commenced this action on May 31, 2007.  Dkt. No. 1.  Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of the Commissioner's denial of her application for SSI benefits.  For the reasons that follow, this case is remanded to the Commissioner for further proceedings.

## II.    BACKGROUND

Claimant was born October 13, 1988.  His past history indicates that he was neglected and

possibly sexually abused; witnessed domestic violence including the abuse of his mother and the stabbing of his father; he may have been sexually abused himself.  R. 121; 194-99, 209-11.[1]  His mother has struggled with substance abuse, and his father was incarcerated when Claimant was three.  R. 94. Claimant has lived for periods with his grandmother and legal guardian, Christine Reid, with his aunt; and in group homes.  R. 28-29, 52, 72.  He has attended Governor Clinton Elementary School, PS 26 and Albany High School in the Albany City School District, Middletown Senior High School, and Poughkeepsie High School special education programs, and he goes weekly to the Astor Child Clinic for counseling and therapy.  R. 48, 65, 142-143.

In addition to the counseling he received at the Astor Clinic and prior to his latest SSI benefit application, Claimant was evaluated by numerous school psychologists and psychiatrist, underwent multiple rounds of IQ testing, and received Individualized Education Program ("IEP") reviews.  R. 216-18; 212-15; 150-53; 263-64; 219-20;142-47; 170-86; 239-45.  In the course of his application, Claimant was further evaluated by a State agency psychiatrist and consultative psychologist.  R. 84-93; 228-36.

The relevant procedural history may be summarized as follows: Plaintiff filed an application on behalf of Claimant for SSI on August 2, 2005,[2] alleging a disability beginning July 30, 1996 and September 1, 1995.  Administrative Transcript (Dkt. No. 7) ("R.") at 41, 50-53, 64.  The application describes Claimant as speech impaired and learning disabled.  R. 64.  On September 26, 2005, the Social Security Administration denied Claimant's claim for SSI benefits after finding that he was not

---

[1] Citations to the underlying administrative record are designated as "R."

[2] On August 26, 1997, Claimant's grandmother filed a prior application for SSI benefits on his behalf. R. at 41-43.  That application appears to have been denied on December 5, 1997, see R. 51, though the record does not include official documentation of that administrative decision.  Nor does anything in the record indicate an appeal was taken from that initial denial.

disabled under the rules.  R. at 32-35.  On November 9, 2005, Plaintiff timely requested a hearing

before an Administrative Law Judge ("ALJ") on Claimant's behalf; that hearing occurred August 22,

2006, before ALJ Michael Friedman.  See R. 11; 30-32; 265-89.  Claimant appeared along with his

mother and attorney, Christopher Dempf, Esq.  Both Claimant and his mother testified at the hearing.

R. at 265-89.  On September 28, 2006, ALJ Friedman issued a decision denying Plaintiff's application.

R. at 8-10.  Plaintiff filed a timely request for review by the Appeals Council.  R. at 7.  The ALJ's

decision became the Commissioner's final decision on April 5, 2007, when the Appeals Council denied

Plaintiff's request for review.  R. at 4-6.

Plaintiff, through counsel, commenced this action on May 31, 2007.  Compl. (Dkt. No. 1).  The

Commissioner filed an Answer on October 9, 2007.  Dkt. No. 9.  Both parties have moved for judgment

on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  See Pl.'s Brief (Dkt. No. 15);

Def.'s Brief (Dkt. No. 16).

## III.    STANDARD OF REVIEW

### A.  Review of Commissioner's Final Determination

District courts have jurisdiction to review claims contesting a final decision by the Commission

of Social Security denying disability benefits.  42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3).  In

reviewing any such claim, a district court may not determine *de novo* whether an individual is disabled.

42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).

Rather, it must defer to the Commissioner's determination unless the correct legal standards were not

applied or that determination is not supported by substantial evidence in the record.  Johnson v. Bowen,

817 F.2d 983, 986 (2d Cir. 1987).

"Substantial evidence" requires more than a mere scintilla of evidence, yet less than a preponderance.  Sanchez v. NLRB, 785 F.2d 409 (2d Cir. 1986).  It has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).  Where evidence is susceptible to more than one rational interpretation, a court may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted); Barnett v. Apfel, 12 F. Supp. 2d 312, 314 (N.D.N.Y. 1998).

A district court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand.  42 U.S.C. § 405(g).  Granting judgment on the pleadings is appropriate where the material facts are undisputed and where a court may make a judgment on the merits with reference only to the contents of the pleadings.  Fed. R. Civ. P. 12(c); Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).  Remand is warranted where there are gaps in the record and further development of the evidence is needed, or where the ALJ has applied an improper legal standard.  See Butts, 388 F.3d at 385; Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999); Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).  Remand is most appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.

1996) (citation omitted).  By contrast, reversal and remand solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and further development of the record would not serve any purpose.  Rosa, 168 F.3d at 83; Parker, 626 F.2d at 235; Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983).

### C.  Review of Disabled Child's Supplemental Security Income Benefit Determination

To qualify for SSI benefits, an individual must demonstrate that he or she is "disabled" as defined under the Act.  "An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration promulgated regulations establishing a three-step sequential analysis to determine whether an individual under the age of eighteen is eligible for SSI benefits on the basis of a disability.  20 C.F.R. § 416.924(a).  First, the ALJ considers whether the child is engaged in "substantial gainful activity."  Id. at § 416.924(b).  Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations."  Id. at § 416.924(c).  Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment meets, medically equals, or functionally equals a disability listed in the regulatory "Listing of Impairments" ("Listings").  Id. at § 416.924(d).  If an impairment is found to meet, or qualify as the medical or functional equivalent to a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled.  20 C.F.R. § 416.924(d)(1).

5

**IV.     DISCUSSION**

In reaching his ultimate conclusion that Claimant was not disabled, ALJ Friedman made the following findings: 1) Claimant had not engaged in substantial gainful activity during the relevant period; 2) Claimant suffers from affective disorder and a learning disorder and that these constitute severe impairments; 3) Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listings including the listings for mental disorders; and 4) Claimant does not have an impairment or combination of impairments that functionally equals the listings. R. 13-21.  Plaintiff objects to the third and fourth findings above, contending that the ALJ did not properly consider and evaluate Claimant's mental and emotional limitations, nor adequately set forth in the record the bases of his conclusions.  Pl.'s Brief at 12-16.  Plaintiff further claims that the ALJ failed to give proper weight to Claimant's treating sources.  Id. at 17-20.

**A.      Gainful Activity**

Step one of the three-step analysis for determining a child's eligibility for SSI benefits requires an ALJ to consider whether the claimant is engaged in substantial gainful activity, i.e. physical or mental work activity done for pay or profit.  20 C.F.R. § 416.924(b); 20 C.F.R. § 416.972.  The ALJ found that Claimant is not engaged in substantial gainful activity, see R. 14, a conclusion not in dispute.

**B.      Severe Impairment**

At the second stage, the ALJ must determine whether a claimant has a medically determinable "severe" impairment or combination of impairments that is "severe."  20 C.F.R. § 416.924(c).  The ALJ found that Claimant's affective disorder and learning disorder were severe.  R. 14.  These findings, also undisputed, are supported by substantial evidence.  See, e.g., R. 84; 230.

**C.      The ALJ's Evaluation of the Medical Opinions of Record are not Supported by**

6

**Substantial Evidence**

In reaching his conclusions regarding whether Claimant's impairment or combination of impairments meet, medically equal, and particularly, functionally equal the Listings, the ALJ did not give any source controlling weight, but he gave great weight to the opinion of Dr. Dambrocia, the examining psychiatrist in the record.  R. 16.  He did not afford the same weight to the opinion of the consultative psychologist, Dr. Thibodeau.  R. 16.  The ALJ explained that the latter opinion did not deserve great weight because the intelligence testing Dr. Thibodeau's conducted showed an IQ significantly lower than that found in prior testing.  Additionally, Dr. Thibodeau's opinions were deemed inconsistent with those of other medical sources which were based on more fully developed records of Claimant's functioning.  R. 16.

*I.  The ALJ was warranted in not affording controlling weight to any source*

Plaintiff objects to the ALJ's failure to give great or controlling weight to Claimant's treating sources, including his Special Education Teacher, Psychologists, Psychiatrists, and Dr. Thibodeau.  Pl.'s Brief at 17-20.  Plaintiff's argument misconstrues the scope of the "treating physician's rule."[3]

An ALJ must give controlling weight to a treating physician's opinion when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).  Where a treating physician's opinion is deemed undeserving of controlling weight, an ALJ may

---

[3] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

7

nonetheless give it "extra weight" under certain circumstances.  20 C.F.R. § 404.1527(d).  When

determining the proper weight to afford the treating physician's opinion if it is not entitled to

controlling weigh,t an ALJ should consider the: (1) length of the treatment relationship and the

frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of

opinion, (4) consistency of opinion with the record as whole, (5) specialization of the treating physician,

and (6) other factors brought to the attention of the court.  C.F.R. § 404.1527(d)(1)-(6); <u>see also</u> <u>de</u>

<u>Roman v. Barnhart</u>, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003); <u>Shaw</u>, 221

F.3d at 134; <u>Clark v. Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir.1998); <u>Schaal v. Apfel</u>, 134 F.3d

496, 503 (2d Cir. 1998).

       To the extent that Plaintiff seeks to apply the treating physician's rule to the opinions of

Claimant's Teacher, that rule is inapplicable.[4]  <u>See</u> 20 C.F.R. § 404.1527(a)(2); SSR 06-03p, 2006 WL

2329939, at *2 (Educational personnel, such as school teachers are not "acceptable medical sources,"

and only "acceptable medical sources" can give medical opinions and be considered treating sources

entitled to controlling weight.).  Similarly, Plaintiff appears to assert through a title-heading of her brief,

not otherwise elaborated upon, that the opinions of Claimant's psychologists and psychiatrists should be

given controlling weight.  Pl.'s Brief at 17.  The Court assumes that Plaintiff is here referring primarily

to the opinions of Doctors DeLisle, Donohue, and Jolley, as well as older opinions provided by Dr.

Lanzafame of the Astor Child Clinic (R. 194-99), Dr. Capozzolla, a school psychologist at the Albany

City School District (R. 216-18), and Dr. Giannascoli, a school psychologist at the Poughkeepsie School

---

     [4] While the opinions of educators and other non-medical sources are not entitled to
controlling weight under the regulations, they are, nevertheless, deemed valuable sources of
evidence in assessing impairment severity and functioning and should be considered by the ALJ.
20 C.F.R. § 404.1513(d)(2); SSR 06-03p, 2006 WL 2329939, at *3.

District (R. 212-15).  Given the limited and relatively brief evaluations conducted by the current sources and the non-current nature of the remaining sources, the ALJ's decision not to afford their opinions controlling weight is appropriate.  See 20 C.F.R. § 404.1527(d).

Dr. Thibodeau's opinion is also undeserving of controlling weight under the treating physician's rule.  First, Dr. Thibodeau is not the treating physician, but rather, a consulting examiner and program psychologist.  His opinion is thus not entitled to any special consideration; it should, of course, be considered as opinion evidence except insofar as it proposes an ultimate determination as to whether Claimant is disabled.  20 C.F.R. §§ 416.927(e), (f)(2); 416.912(b)(6).

Finally, to the extent that Plaintiff seeks, through asserting the treating physician's rule, to preclude the ALJ's consideration of Dr. Dambrocia's opinion, her argument is flawed.  As noted, the ALJ properly denied affording controlling weight to any source.  It is well settled that an ALJ is entitled to rely upon the opinions of State agency medical consultants such as Dr. Dambrocia, as these consultants are deemed qualified experts in the field of social security disability.  See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (citing Shisler v. Sullivan, 3 F.3d 563, 567-68 (2d Cir. 1993).

*ii.  The ALJ's Decision to Reject Plaintiff's Lowest IQ Score was Reasonable*

Plaintiff argues that, even if not given controlling weight, the ALJ accorded Dr. Thibodeau's opinion too little weight.  Pl.'s Brief at 17-20.  The Commissioner defends the ALJ's weighting, contending that Dr. Thibodeau's opinions are not supported by the record.  Def.'s Br. at 17-20; see also 20 C.F.R. § 404.1527(f)(2)(ii).

Dr. Thibodeau's evaluation of Claimant included an IQ test in which Claimant achieved a full

scale of 70, placing him in the range of borderline intellectual functioning and borderline mental retardation.  R. 235.  Plaintiff asserts that this scoring should form the basis of the ALJ's assessment. However, Dr. Thibodeau himself qualifies this scoring noting that "[i]t might be a slight underestimate due to [Claimant's] lack of cooperation."  Moreover, in prior testing, Claimant achieved a full score of 80 on the WISC-IV and 81 on the TONI-III.  R. 241; 153.  Earlier testing revealed Claimant to have a full scale of 90 on the WISC-III (December 1998) and 86 on the WISC-III (January 1995).  R. 150; 217-18.  Psychologists evaluating these lower scores generally placed Claimant in the low average range.  R. 153.

This Court has previously noted that IQ scores themselves should not be deemed opinion evidence as defined in 20 C.F.R. 404.1527(a)(2), but rather constitute laboratory findings pursuant to 20 C.F.R. § 404.1528.  Miller v. Astrue, 3:07-CV-1093, 2009 WL 2568571, at *6 (N.D.N.Y. Aug. 19, 2009).  Additionally, courts generally accept that an ALJ may reject an IQ score as invalid when it is inconsistent with the record.  See, e.g., Miller, 2009 WL 2568571, at *7 (citing cases); Vasquez-Ortiz v. Apfel, 48 F. Supp. 2d 250, 257 (W.D.N.Y. 1999).  As the above discrepancies indicate, the IQ test conducted by Dr. Thibodeau, as well as the conclusions he drew therefrom, are inconsistent with other evidence in the record.  Hence, the ALJ's basis for rejecting the lower score has substantial support.

*iii.  Dr. Thibodeau's Opinion is not Inconsistent with Other Medical Evidence in the Record*

The ALJ found that Dr. Thibodeau's opinion was inconsistent with those of other psychiatrists, which were based on more information as to Claimant's functioning; he, accordingly, did not give Thibodeau's opinion great weight.  R. 16.

As an initial matter, the Court notes that an ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant."  20 CFR 404.1527(f)(2)(ii).

10

Here, the ALJ failed to do so.  While explicitly affording Dr. Dambrocia's opinion "great weight," the ALJ leaves uncertain the weight given to Dr. Thibodeau's opinion, stating only that it "has not been given great weight."  R. 16.  Thus, it is unclear what, if any, weight the ALJ afforded to Dr. Thibodeau's opinion.

Additionally, the ALJ's finding that Dr. Thibodeau's opinion is at odds with other psychiatrists' who had greater exposure to Claimant's functioning is not supported by the record.  Dr. Thibodeau found Claimant to suffer from major depressive disorder and borderline mental retardation, leaving Claimant unable "to attend to, follow, and understand age appropriate directions. . . complete age appropriate tasks . . . maintain appropriate social behavior . . . respond appropriately to changes in the environment . . . [or] interact[] adequately with peers and adults."  R. 231.  These findings are not inconsistent with other medical evidence, including opinions provided by Doctors DeLisle, Jolley, Lanzafame, Capozzolla, and Giannascoli.  Furthermore, his findings are consistent with non-medical source evidence including that given by Claimant's Mother (R. 279-86), Grandmother (74-82), and Special Education Teacher, Joanne Woods(70-72).  Those medical sources with whom Thibodeau's opinion most sharply divides, namely Doctors Dambrocia and Donohue's, are not, contrary to the ALJ's finding, based on more fully developed records.  Thus, the ALJ's decision to grant Dr. Thibodeau's opinion not great weight is not supported by the record.

Dr. DeLisle, a psychiatrist associated with the Lasalle School, diagnosed Claimant as suffering from neglect and family derangement, but explicitly states that "it is possible that he suffers from an affective disturbance such as depression."  R. 263-64.  Thus, it cannot be said that DeLisle's assessment is at odds with Thibodeau's diagnosis of depression.  Dr. DeLisle did not assess Claimant's intelligence, and hence did not come to a different conclusion than Dr. Thibodeau regarding Claimant's mental

capacity.  R. 264.  DeLisle notes that Claimant has strengths including a "willingness to work in school and at a vocational job" but did not opine on Claimant's ability to follow directions or complete age appropriate tasks.  Finally, despite noting one positive relationship Claimant has formed, DeLisle notes throughout his evaluation that Claimant appears guarded, shy, unable to effectively communicate or easily form trusting relationships.  R. 264.  In sum, Dr. DeLisle's evaluation in no way contradicts and in some cases supports that of Dr. Thibodeau.

Dr. Jolley, a school psychologist at Middletown High School, conducted IQ testing and diagnosed Claimant as having an "Adjustment Disorder of Adolescence."  Her assessment included findings that Claimant's Interpersonal Relations, Self Reliance, and Attitude to Teachers scales fell in the "At-Risk" range, and his "understanding of conventional behaviors appropriate to certain social situations fell in the borderline range."  R. 151-53.  These findings largely support Dr. Thibodeau's conclusions regarding Claimant's inability to maintain appropriate social relations.  Further, despite Claimant's higher achievement on the IQ testing that Dr. Jolley conducted, his reading comprehension was found deficient and his decoding fell in the borderline range.  Dr. Jolley, however, did not find Claimant to be suffering from depression.

Other psychologists who evaluated Claimant in years prior to his latest SSI benefits application produced findings in accordance with, though not identical to, those made by Dr. Thibodeau.  Those evaluations were based on fairly extensive exposure with Claimant or with the benefit of relatively complete records.  Dr. Lanzafame of the Astor Clinic, for example, found that Claimant has a "severe impairment in his thinking process . . . . consistent with symptoms of a serious thought disorder . . . . [which] makes functioning in any situation difficult."  R. 195.  He found Claimant "does not have the resources necessary to handle stress" and "has great difficulty relating to others."  R. 196-97.  Notes

12

from the Astor Clinic refer to Claimant as depressed and diagnose him as having an adjustment disorder mixed with anxiety and depressed mood.  R. 205-11.

In February 1997, after twelve counseling sessions, David Giannascoli, Ph.D., a school psychologist with the Poughkeepsie City School District, diagnosed Claimant as educationally handicapped for emotional reasons, found his self concept "seriously damaged," and noted poor social development skills.  R. 212-15.  In November 1997, Claimant was diagnosed with Major Depressive Disorder, a fact noted by Margaret Capozzola, a school psychologist with the Albany School District.  R. 216.  Capozzola further noted Claimants "long history of depression, withdrawl, and acting out behavior," though she found Claimant displayed higher levels of intellectual functioning than did Thibodeau and the other medical sources.

Dr. Donohue , a psychiatrist with the St. Cabrini home, also evaluated Claimant on one occassion in 2004.  Contained in his notes from this evaluation are records including a psychiatric consultation completed by L. DeEvoli in March 2003, which characterized Claimant as "unhappy and depressed."  R. 219.  In his own evaluation, Dr. Donohue asked Claimant if this were the case, and Claimant denied it to be so.  R. 219-20.  Donohue's evaluation notes that Claimant displayed a full range of affect, though he also found Claimant avoided talking about certain topics; he diagnosed Claimant with an Adjustment Disorder of Adolescence.

Dr. Dambrocia, like Dr, Donohue and Thibedeau, appears to have examined Claimant on only one occasion.  His evaluation reveals Claimant to have much less severe impairments than those identified by Thibedeau.  Of all the medical evidence in the record Dr. Donohue and Dr. Dambrocia's evaluations are those most inconsistent with the opinion provided by Dr. Thibodeau.  The Court notes, however, that contrary to the ALJ's statement, neither of these sources appear to have more information

13

regarding the Claimant's actual functioning than Dr. Thibodeau had.

In light of the foregoing, the Court finds that the ALJ's assignment of not great weight to Dr. Thibodeau's opinion, is both an error of law and not supported by substantial evidence.

### D.    Credibility

Plaintiff argues that the ALJ erred in his determination that Plaintiff was not totally credible.  R. 16; Pl.'s Brief at 13-14.  Defendant argues that the ALJ properly determined Plaintiff's credibility. Def.'s Brief at 20-22.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).

An ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529; see also Foster v. Callahan, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).  First, based upon the claimant's objective medical evidence, the ALJ must determine whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. § 404.1529(a).  Second, if the medical evidence alone establishes the existence of such impairments, the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit that claimant's functioning. 20 C.F.R. § 404.1529(c).  If the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's own

complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186.  An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence.  Murphy v. Barnhart, No. 00-9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citing Bischof v. Apfel, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999); Bomeisl v. Apfel, Civ. No. 96-9718, 1998 WL 430547, at *6, at *19 (S.D.N.Y. July 30, 1998) ("the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

In reaching his conclusions, the ALJ stated that while "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms . . . the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely credible."  R. 16.  Sufficient evidence supports this evaluation.

The Court notes that Plaintiff and Claimant often advance differing accounts of Claimant's impairments; Claimant downplays the severity of his limitations, whereas Plaintiff tends to see those limitations as severe.  See, e.g., R. 267-89.  Plaintiff contends that Claimant is denying the intensity, persistence, and limiting effects of his impairments because of his low self esteem and as a symptom of his depression.  While this possibility finds support in the record, see R. 194-99, so too does the fact, noted by some of the medical professionals, that Plaintiff may be overly protective and expressing

15

inordinate concern over her son's functioning.  R. 263.  These same professionals often comment that Claimant may be withholding information because of his low self esteem, lack of trust, and difficulty in dealing with emotional situations.  R. 263, 195.  Nevertheless, given the inconsistencies between Claimant's subjective accounts and those of his mother, and the questioning of both these views by outside observers, the ALJ's decision has adequate support.

> **E.    Meeting, Equaling, or Functionally Equaling an Impairment in the Listings**

At the third stage, an ALJ must determine whether claimant's impairment or combination of impairments, including those that are not deemed severe, meets, medically equals, or functionally equals one of those contained in 20 C.F.R. Part 404 Subpt. P, App. 1.  20 C.F.R. § 416.924(d).  If a claimant's impairment or combination of impairments, including those that are not deemed severe, meets, medically equals, or functionally equals a listing, and meets the duration requirement, that claimant shall be found disabled.  Id.; 42 U.S.C. § 1382c(a)(3)(A).

ALJ Friedman found that Claimant's impairments, alone or in combination, fail to meet, medically equal, or functionally equal a listing.  R. 14-20.  In assessing Claimant's functioning in light of the six domains for functional equivalence to the listings, the ALJ found Claimant had less than marked limitation or no limitation in each domain.  R. 16-20.

> *(i)    Meeting or Medically Equaling a Listing*

Plaintiff argues that the ALJ's determination that Claimant's impairment(s) do not meet or medically equal any of those in the Listings should be remanded because they are not supported by substantial evidence and the ALJ "does not set forth in the record his basis for th[is] conclusion . . . nor what considerations were given to the listings for a mental disorder."  Pl.'s Brief at 13.  Defendant argues that the ALJ's finding that Plaintiff's condition met no listed impairment is supported by

substantial evidence.  Def.'s Brief at 5.

A claimant is entitled to benefits if his or her impairment(s) meets criteria set forth in the Listings.  20 C.F.R. § 404.1520(d).  The burden is on the plaintiff to present medical findings that show that his or her impairments match a listing or are equal in severity to a listed impairment.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Bull v. Astrue, 7:06-CV-551, 2008 WL 2594430, at *6 (N.D.N.Y. June 27, 2008) (citing  Zwick v. Apfel, No. 97 Civ. 5140, 1998 WL 426800, at *6 (S.D.N.Y. July 27, 1998)).  To meet this burden, a claimant must show that his or her impairment "meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original); see also 20 C.F.R. § 404.1525(d).

Where a disability claim is premised upon one or more listed impairments of Appendix 1, the ALJ "should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment."  Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982).  "'Where the claimant's symptoms as described by medical evidence appear to match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings.'"  Pitcher v. Barnhart, No. 5:06-CV-1395, 2009 WL 890671, at *11 (N.D.N.Y. Mar. 30, 2009) (Bianchini, *M.J.*) (quoting Brown ex rel. S.W. v. Astrue, No. 1:05-CV-0985, 2008 WL 3200246, at *10 (N.D.N.Y. Aug. 5, 2008)).  A court, however, may also "look to other portions of the ALJ's decision" and to "credible evidence" when considering whether a determination was supported by substantial evidence.  The Second Circuit has noted that "[c]ases may arise, however, in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record . . . . In such instances, [a court should] remand the case for further findings or a clearer explanation for the decision."  Id. (citations omitted).  Thus, while an ALJ is not

obligated to address specifically each piece of evidence in his or her decision, Jones v. Barnhart, No. CV-04-2772, 2004 WL 3158536, at *6 (E.D.N.Y. Feb. 3, 2004), he or she must address any issue central to the disposition of the claim.  See Ramos v. Barnhart, No. 02 Civ. 3127, 2003 WL 21032012, at *10 (S.D.N.Y. May 6, 2003) (citing, *inter alia*, Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) ("We of course do not suggest that every conflict in a record be reconciled by the ALJ or the Secretary but we do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.")).

At step three, the ALJ found that Claimant had no impairment or combination of impairments that met or medically equaled a listed impairment. R. 16.  In making this determination, ALJ noted that he had given special consideration to the listings for mental disorders contained at 12.00 in Appendix 1. R. 16.   Section 12.00 is an introductory provision related to mental disorder impairments, which is followed by specific conditions described in Listings 12.02 through 12.10.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.  Based on the ALJ's discussion, the Court has no trouble inferring that the ALJ considered Claimant's limitations with regard to Listings 12.04 (Affective Disorder) and 12.05 (Mental Retardation).

In support of his conclusion that Claimant's impairment(s) do not meet or medically equal these listings, the ALJ cited to evaluations by Dr. Jeffrey DeLisle, psychiatrist, Dr. William Donohue, psychiatrist, and Dr. John Thibodeau, consultative psychologist; he also noted portions of an Individualized Education Plan prepared by the Poughkeepsie School District, and recounted testimony by Claimant and Plaintiff at the hearing.  R. 15-16.

*(a) Listing 12.04*

To meet Listing 12.04 (Affective Disorder), a claimant must satisfy the diagnostic description in

the introductory paragraph of 12.04, and meet the additional requirements of § 12.04(A) and (B), or

§12.04(C).  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A) ("If your impairment satisfies the

diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the

Commissioner] will find that your impairment meets [Listing 12.05]."); 20 C.F.R. Pt. 404, Subpt. P,

App. 1, § 12.04.  Thus, to meet Listing 12.04, Claimant must prove that he suffers from an affective

disorder that is:

> Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive
> syndrome.
>
> The required level of severity for these disorders is met when the requirements in both A and B
> are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:
  1. Depressive syndrome characterized by at least four of the following:
      a. Anhedonia or pervasive loss of interest in almost all activites; or
      b. Appetite disturbance with change in weight; or
      c. Sleep disturbance; or
      d. Psychomotor agitation or retardation; or
      e. Decreased energy; or
      f. Feelings of guilt or worthlessness; or
      g. Difficulty concentrating or thinking; or
      h. Thoughts of suicide; or
      i. Hallucinations, delusions, or paranoid thinking; or

  2. Manic syndrome characterized by at least three of the following:
      a. Hyperactivity; or
      b. Pressure of speech; or
      c. Flight of ideas; or
      d. Inflated self-esteem; or
      e. Decreased need for sleep; or
      f. Easy distractability; or
      g. Involvement in activities that have a high probability of painful consequences
         which are not recognized; or
      h. Hallucinations, delusions or paranoid thinking;
or

  3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic
     picture of both manic and depressive syndromes (and currently characterized by either or both

syndromes);

AND

B. Resulting in at least two of the following:
   1. Marked restriction of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or
   3. Marked difficulties in maintaining concentration, persistence, or pace; or
   4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
   1. Repeated episodes of decompensation, each of extended duration; or
   2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
   3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Plaintiff's brief provides no analysis of Claimant's impairments with regard to these factors, appearing to rely instead on the fact that the ALJ similarly did not detail his analysis under 12.04. As noted, however, the Court shall look to credible evidence in the record to determine whether the ALJ's decision is properly supported. Moreover, the ALJ does indicate in some depth, the factual basis for his conclusion, mentioning evidence that supports and contradicts that determination. R. 14-16. The ALJ recites many of the findings by medical professionals evaluating Claimant, the IEP recommendations that Claimant received from the Poughkeepsie School District, and recognizes the testimony of Claimant's mother. Without contrary argument from Plaintiff and upon finding sufficient evidence in the record to make the ALJ's determination that Claimant's impairment(s) do not meet the requirements of § 12.04 reasonable, the Court shall not upset that conclusion.

 *(b) Listing 12.05*

Similar to the above, to meet Listing 12.05 (Mental Retardation), a claimant must satisfy the diagnostic description in the introductory paragraph of 12.05, and all additional prongs of the particular subsection for which his disability may qualify.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).  Thus, to meet any of the Listings in § 12.05, Claimant must first show: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 through 70.[5]  If that threshold is met, Claimant must also prove that his impairment satisfies the criteria of one or more subsections of Listing 12.05.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Evidence in the record also supports the ALJ's finding that Claimant's impairment(s) do not meet or medically equal listing 12.05.  As noted above, the ALJ was acting within his discretion in rejecting Claimant's only IQ test score that would meet the 60-70 threshold requirement.  That score was inconsistent with all other prior tests and Dr. Thibodeau notes that the score may underestimate Claimant's true IQ.  R. 235.

Additionally, the non-examining consultant, Dr. Joseph Dambrocia, found that Claimant did not meet or medically equal the listings.  R. 84-90.  Because other evidence in the record supports his findings, Dr. Dambrocia's opinion constitutes substantial evidence.  See 20 C.F.R. § 416.927(f); Diaz, 59 F.3d at 313 n.5 (citing Shisler, 3 F.3d at 567-68 (regulations are reasonable and not arbitrary or capricious even though they "permit the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record.")).

---

[5] The regulations specify that "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, [the Commissioner] use[s] the lowest of these in conjunction with 12.05."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(6)(c).

Plaintiff rightly argues that some evidence in the record contradicts that cited above, see, e.g., R. 194-99; 228-32, but fails to present medical findings or other evidence sufficient to show that his or her impairments match or equal in severity to all the criteria of listing 12.04 or 12.05.  Further, the ALJ's finding is reasonable and supported by substantial evidence in the record.  Accordingly, this Court must defer to his conclusion that Claimant's impairment(s) fail to meet or medically equal listings 12.04 or 12.05 or to equal those listings in severity.

       *(ii)*       *Functionally Equaling a Listing*

To determine whether a child's impairment or combination of impairments functionally equals the listings, an ALJ must evaluate the applicant's functioning in six domains: 1) Acquiring and using information; 2) Attending and completing tasks; 3) Interacting and relating with others; 4) Moving about and manipulating objects; 5) Caring for yourself; and 6) Health and physical well-being.  See 20 C.F.R. § 416.926a(b)(1)(i-vi)(2001).  A child claimant's impairment equals or functionally equals a listed impairment, if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  See 20 C.F.R. § 416.926a(a).[6]  Giving great weight to Dr. Dambrocia's evaluation, the ALJ found that Claimant's impairment(s) did not functionally equal the listings.  R. 85.

---

      [6] A marked limitation is defined as one that "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities"; such a limitation is "more than moderate" but "less than extreme."  20 C.F.R. § 416.926a(e)(2)(i).  "It is equivalent of the functioning . . . expect[ed] . . . on standardized testing with scores that are at least two, but less than three, standard deviations below the mean on a comprehensive standardized test designed to measure ability to function in that domain and his day to day functioning in domain related activities is consistent with that score."  20 C.F.R. § 416.926a(e)(2)(i), (iii).  An extreme limitation is one that "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities" and is the rate given to the worst limitation.  20 C.F.R. § 416.926a(e)(3)(i).  This designation is given where a claimant has a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability to function in that domain and his day to day functioning in domain related activities is consistent with that score. 20 C.F.R. § 416.926a(e)(3)(iii).

(a)      *Acquiring and using information*

In assessing Claimant's capacity under the first domain, <u>see</u> 20 C.F.R. 416.926a(g), the ALJ

found that Claimant had limitations in acquiring or learning information and use that information, but

these were less than marked.  R. 17.  This finding is not supported by substantial evidence in the record.

While the ALJ acknowledges that Claimant was enrolled in special education classes, he found

that because Claimant passed the "vast majority" of his classes and was able to work summer jobs, any

limitations Claimant had in this domain were less than marked.  <u>Id.</u>   The ALJ's assertion that Claimant

passed the vast majority of his classes is, in fact, overstated.  <u>See, e.g.,</u> R. 15; 159; 247; 261-62; 263;

270; 277.  Claimant's records show that he struggles to pass classes, failing many, and barely passing

others.  R. 261-62; 247.  The ALJ attributes Claimant's poor performance to his frequent  absenteeism,

an explanation with some support.  <u>See</u> R. 262; 247; 249-51.  The record, however, is full of evidence

suggesting Claimant's limitations in this domain are unrelated to class attendance.  For example, the

Poughkeepsie School District found Claimant "has a significant delay in reading comprehension, math

concepts and social skills" and exempted Claimant from a foreign language requirement because his

"disability adversely affects the ability to learn a language."  R. 254.  This assessment is in accord with

that provided in the Middletown Enlarged City School District IEP.  R. 142-45.  Similarly, an earlier

psychological evaluation conducted by the Astor Child Clinic found Claimant to have a "severe

impairment in his thinking process."  R. 194-99, 211.  Dr. Thibodeau's evaluation led him to suspect

Claimant is in the "borderline mentally retarded range" and "is not able to learn in accordance with his

own cognitive capacity."  R. 230-31.

The ALJ further cites Claimant's ability to work jobs in the summer as evidence of his ability to

acquire and use information.  Again, the ALJ overstates the facts, as the record clearly indicates that

Claimant was unable to hold a job for more than a month or two.  R. 276-77.

20 C.F.R. 416.926a(g)(3) sets out as examples of limited functioning in this domain including difficulty in solving mathematics questions and talking only in short, simple sentences while having difficulty explaining what one means.  Nevertheless, the ALJ fails to address the evidence in the record indicating that Claimant has exactly these difficulties.  See, e.g., R. 77-78; 195; 230; 254; 264.  For example, the ALJ leaves wholly unaddressed evidence such as the Poughkeepsie School's IEP finding that Claimant "has a significant delay in reading comprehension [and] math concepts," see R. 254, and the consistent comments by Claimant's evaluators that he is generally non-responsive and when he does answer questions, his answers are always "very short, often vague, and never elaborated upon," see, e.g., R. 264, 219.

While it is not for this Court to determine whether this contrary evidence should receive greater weight than the absenteeism noted by the ALJ to explain Claimant's poor performance in school, the ALJ should address that evidence and more thoroughly describe reasons why, and the degree to which, he found absenteeism, rather than Claimant's impairments, as contributing to Claimant's inability to acquire and use information.  See Hunt v. Astrue, No. 6:06-CV-99, 2008 WL 3836406, at *10 (N.D.N.Y. Aug. 13, 2008) (Kahn, J.).  The ALJ's has thus failed to set forth a sufficient rationale in support of his decision to allow this Court to determine whether his conclusion is supported by substantial evidence; the matter must, therefore, be remanded.  Id. (citing Berry, 675 F.2d at 469).

(b)      Attending and completing tasks

The ALJ found Claimant had less than marked limitation in attending and completing tasks.  R. 18.  As to this domain, see 20 C.F.R. 416.926a(h), the ALJ's findings are adequately supported by evidence in the record noting Claimant's adequate attention and concentration.  See, e.g., R. 216-18;

24

264.  While some evidence indicates Claimant has significant difficulties in completing tasks, see, e.g.,

R. 240-43, the ALJ's finding has ample support and shall not be disturbed.  See, e.g., R. 150; 217.

     *(c)*     *Interacting and relating with others*

     In evaluating Claimant's impairment(s) with regard to the third domain, see 20 C.F.R.

416.926a(I), the ALJ found Claimant to have less than marked limitations interacting and relating with

others.  R. 17.  The ALJ cites the fact that Claimant has a girlfriend, has been noted in school documents

to have appropriate relationships, and has been described as taking criticism well.  Given the significant

contradictory evidence in the record, and particularly given the lack of analysis provided by the ALJ in

assessing Claimant's limitations in this domain, remanding to allow the ALJ to provide a clearer

explanation as to the basis for his conclusion is appropriate.  Berry, 675 F.2d at 469.

     There is evidence within the record suggesting Claimant does not have any marked limitation

interacting with others.  For example, Dr. Donohue notes that Claimant was "cooperative and compliant

in the group home. . . . [and] has a positive relationship with staff and peers and is respectful to others."

Additionally, Claimant's school records indicate that he "has adjusted to the school environment."  R.

144.  Further, Claimant is noted to have a girlfriend, and maintains contact with family members.  R.

272; 281; 263; 277.  The Poughkeepsie School District's IEP states that Claimant works cooperatively

with his peers, accepts criticism, and has only moderate problems relating to adults.  R. 241.

     Nevertheless, the record is replete with evidence contradicting that which is cited by the ALJ in

support of his conclusion and which is left totally unaddressed by the ALJ.  For example, the ALJ fails

to discuss the conclusion of the State's own medical consultant, Dr. Dambrocia, who found Claimant's

limitations marked in this domain.  R. 86.  This omission is striking considering that Plaintiff was

evaluated by Dr. Dambrocia at the request of the Agency.  See Hunt, 2008 WL 3836406, at *10; see also

20 C.F.R. § 404.1527(b) ("In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive.").

Dr. DeLisle notes in his psychiatric report that Claimant was guarded, non-participatory, and spoke in an almost inaudible tone. R. 264. Similarly, Claimant's Special Education Teacher, Joan Woods writes that Claimant is withdrawn, always talks in a whispering tone, falls into crying episodes if confronted in the classroom. R. 70-71. This evaluation is echoed by Claimant's mother. 282-87. Claimant, himself, states that he does not have any friends with whom he enjoys socializing. R. 272. School Psychologist Miesje Jolley notes that Claimant's "Interpersonal Relations" scale fell in the "At-Risk" range and that Claimant "may not perceive himself as having good relationships with peers or friends." R. 152. After a consultative examination John Thibodeau, Ph.D., found Claimant "extremely isolated and socially withdrawn" as well as "defensive, and resistant, evasive, irritable, and suspicious" such that his "manner of relating was not good" and "is having difficulty of interacting adequately with his peers and adults." R. 229. The ALJ fails to comment on any of these sources' opinions or indicate whether he considered them at all. Remand is appropriate given the ALJ's utter lack of discussion regarding issues central to the disposition of this claim.

       (d)     *Moving about and manipulating objects*

The ALJ found that Claimant experiences no significant limitations in moving about and manipulating objects. R.19. Substantial evidence supports this conclusion: Claimant plays sports, takes part in regular gym classes and has been evaluated by the State medical consultant to possess no limitations in this domain. R. 74; 219, 240; 242; 87.

       (e)     *Caring for oneself*

This domain considers how well a claimant maintains a healthy emotional and physical state,

including coping with stress and takes care of his or her health, possessions, and living area.  20 C.F.R. § 416.926a(k).  The ALJ found that Claimant had no limitations in this area.  R. 19.  In support of this conclusion the ALJ notes that Claimant has appeared neatly groomed and appropriately dressed during his evaluations, and he states that "there are no allegations of limitations in this area of functioning and none are found in the record."  R. 19-20.  This statement is not supported by the record.

The record is far from devoid of evidence suggesting limitations in this area of functioning, and the ALJ's statement that Plaintiff has made no allegations to the contrary is not reasonable.  For example, Claimant's mother recounts several instances of Claimant isolating himself including staying in bed for days without coming out for food or water.  R. 286-87.  Additionally, significant evidence exists in the record, including the evaluation of Dr. Thibodeau, which suggests that Claimant suffers disturbances in eating and sleeping patterns.  See, e.g., R. 229.  Claimant denies he suffers such disturbances when he speaks with psychiatrists, see, e.g. 219; 264; however, he admits that he lost a job because he was oversleeping.  R. 276.

Regarding his ability to deal with stress, Claimant's Special Education Teacher notes that when confronted in the classroom he frequently begins to cry.  R. 70-71.  Claimant admits, and his mother also confirms, that he has these crying spells.  R. 229.  Notably, several objective evaluations state that Claimant's manner of dealing with stress is to withdraw from the world.  See, e.g., R. 70-71; 197; 210; 229-230.  Finally, evidence in the record suggests that Claimant may be engaging in reckless endangerment, self-mutilation, or other dangerous activity including some drug use.  See, e.g., R. 72; 81; 273-74; 229; 216-18; 219; 264, 282-83; 287-88.  In sum, the record is replete with indications that Claimant may not be maintaining a healthy physical and emotional state, and may have difficulty coping appropriately with stress, the ALJ's finding that no such evidence is found in the record, R. 20, is neither

27

reasonable nor supported by substantial evidence.  On remand, the ALJ should address this evidence when assessing Claimant's functioning in this domain.

     *(f)*     *Health and physical well-being*

     In considering Claimant's impairment(s) insofar as they impact his health and physical well-being, <u>see</u> 20 C.F.R. 416.926a(l), the ALJ concluded that Claimant suffers no limitation.  R. 20.  This finding is amply supported by evidence in the record including evaluations by Dr. Dambrocia, and Donohue, the IEP reports and school records from the Poughkeepsie Middle School, and the Claimant's own testimony.  R. 87; 219; 145; 242; 256; 161; 268.

## V.     CONCLUSION

     Given the above discussion, remand is appropriate to allow the ALJ to make further findings and/or clarify the basis of his decision.  Accordingly, it is hereby

     **ORDERED**, that the Commissioner's determination of no disability is **VACATED**, and the matter is **REMANDED** for further administrative proceedings; and it is further

     **ORDERED**, that the Clerk serve a copy of this Order on all parties.

     **IT IS SO ORDERED**.

DATED:     June 23, 2010
            Albany, New York

                                    Lawrence E. Kahn
                                    U.S. District Judge